**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DEAN DENNIS, et al.,

                Case No. 1:19-cv-00386

       Plaintiffs,                Black, J.
                                    Bowman, M.J.

   v.

STATE TEACHERS RETIREMENT BOARD, et al.,

       Defendants.

**REPORT AND RECOMMENDATION**

Plaintiffs Dean Dennis and Robert Buerkle, though counsel, initiated this putative class action against the Ohio State Teachers Retirement Board ("STRB" or "Board") on May 23, 2019. After the Defendant STRB moved to dismiss the original complaint, Plaintiffs filed an amended complaint on August 26, 2019. (Doc. 14). The amended complaint names ten individual Board members ("Board members"). Both the Board and the individual Board members have filed motions to dismiss the amended complaint (Docs. 22, 24), to which Plaintiffs have filed responses, and Defendants have replied. For the reasons that follow, the undersigned recommends that the motions be GRANTED and that this case be dismissed.

**I.    Standard of Review**

The standard of review applicable to a Rule 12(b)(6) motion to dismiss requires this Court to "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party

is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir.2007).  While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted). The court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.,* 508 F.3d at 336.

## II.    Allegations of Complaint

Plaintiffs are retired public school teachers.  STRB administers the State Teachers Retirement System ("STRS"), which is a public retirement system in which Plaintiffs are enrolled.[1]  Plaintiffs seek damages as well as declaratory and injunctive relief for themselves and all similarly situated persons in the form of reinstatement of a 2% annual cost of living allowance ("COLA") that was reduced to 0% by STRB on July 1, 2017. Plaintiffs allege that they had an unconditional, contractual right to the COLA, and/or a constitutionally protected property interest in the COLA.  Plaintiffs further allege that the COLA could not be reduced below 2% unless the Board's actuary determined (in a specific, designated report) that a reduction was necessary to preserve the fiscal integrity of the system.  (*See* Doc. 14 at ¶21).

STRS operates under Chapter 3307 of the Ohio Revised Code.  Plaintiffs rely in part upon R.C. § 3307.67(A), which was amended in 2012 to provide as follows:

> Except as provided in divisions (D) and (E) of this section, the state teachers retirement board shall annually increase each allowance or benefit payable

---

[1]For purposes of this Report and Recommendation, the undersigned refers to the Defendant as "STRB". However, the actual fund (STRS) and its administrative body (STRB) are closely intertwined.

under the STRS defined benefit plan.  Through July 31, 2013, the increase shall be three percent.  On and after August 1, 2013, the increase shall be two percent.

*Id.*

Division (E) of the same Ohio statute provides as follows:

The board may adjust the increase payable under this section if the board's actuary, in its annual actuarial valuation required by section 3307.51 of the Revised Code or in other evaluations conducted under that section, determines that an adjustment does not materially impair the fiscal integrity of the retirement system or is necessary to preserve the fiscal integrity of the system.

*Id.*

Plaintiffs allege that as of August 1, 2013, they were given a "vested right" to an annual COLA for all then-current retirees, pursuant to O.R.C. § 3307.42(A), which provides:

*The granting to any person of an allowance*, annuity, pension or other benefit under the STRS defined benefit plan… pursuant to an action of the state teachers' retirement board *vests a right* in such person, so long as the person remains the beneficiary of any of the funds established by section 3307.14 of the Revised Code, to receive *the allowance*, annuity, pension, or benefit at the rate *fixed at the time of granting the allowance*, annuity, pension, or benefit.

*Id.* (emphasis added).  Based upon the definition of "allowance" as including "the pension plus the annuity, *or any other payment under the STRS defined benefit plan*," Plaintiffs assert that the annual COLA became an integral part of their vested "allowance."  *See* O.R.C. § 3307.50(E) (emphasis added); *see also* OAC § 3307:1-10-01(B).  (Doc. 15 at ¶43).

In its motion to dismiss, STRB argues that this Court lacks subject matter jurisdiction because the Board is entitled to immunity from suit under the Eleventh Amendment to the United States Constitution.  Alternatively, Defendants argue that

Plaintiffs have failed to allege any plausible basis for the existence of a constitutionally protected contractual or property interest. STRB cites to legislative history in the 2012 enactment of the COLA statute that expressly states that "no member has a legitimate expectation of any particular future cost-of-living adjustment…under Ohio law." Sub.S.B. No. 342, Section 7, 129th General Assembly. The individual Board members present additional arguments based upon the fact that they have been sued in their individual capacities. For the convenience of the Court, the undersigned begins with STRB's arguments, in which the individual Board members join.

### III. Analysis of STRB's Motion

#### A. STRB's Assertion of Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. XI. With limited exceptions, the Amendment is "a true jurisdictional bar" that precludes lawsuits filed in federal court against any state, even if the suit is filed by a state's own citizens. *See Russell v. Lundergan-Grimes,* 784 F.3d 1037, 1046 (6th Cir. 2015); *see also Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). Defendant STRB asserts that it is an "instrumentality of the state" and therefore is entitled to Eleventh Amendment immunity from suit. *See generally, Regents of Univ. of California v. Doe*, 519 U.S. 425, 430 (1997).

STRB bears the burden of proof on this issue. "The entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Guertin v. State*, 912 F.3d 907, 936 (6th Cir. 2019) (quoting *Lowe v.*

4

*Hamilton Cty. Dept. of Job & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010)).  In *Guertin*, the Sixth Circuit rejected a claim by the City of Flint that it was entitled to Eleventh Amendment immunity because Michigan had taken over some of the City's administrative functions on an emergency basis based upon the City's insolvency.  *Id.*  In rejecting the City's argument, the court reiterated the four factors to be considered in determining whether an entity or agency is entitled to Eleventh Amendment immunity under established case law:

> (1) The State's potential liability for a judgment against the entity; (2) the language by which state statutes, and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Guertin*, 912 F.3d at 937 (quoting *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc)).

In contrast to the result reached in *Guertin*, the Sixth Circuit held in *Ernst* that a government retirement system that provides for benefits for Michigan state judges and other state officials is an "arm of the state" entitled to immunity.  In the instant case, STRB relies generally on *Ernst*.  However, STRB also cites to several cases that, considering the precise issue before this Court, have held that the STRB, like the state retirement system at issue in *Ernst*, is an "instrumentality of the state." *See Appeal of Ford*, 446 N.E.2d 214, 215 (Ohio Ct. App. 10th Dist. 1982).

The plaintiff in *Appeal of Ford* was an employee of STRS who alleged wrongful termination in violation of state civil service protections.  STRS maintained that its employees were not "in the service of the state" as defined under state law, and therefore not part of the State Civil Service System.  The state appellate court reasoned:

> There is no doubt but that the State Teachers Retirement Board is a public agency created by statute to exercise a certain portion of the sovereignty of the state as authorized by statute; namely, to provide for the welfare of teachers and certain other school and college educational employees so as to provide a retirement fund and system for their benefit.

*Id.*, 446 N.E.2d at 217. "While it is readily apparent that the State Teachers Retirement Board is a state agency but not a political subdivision, it is not so readily apparent that employment with such board constitutes employment in the service of the state. The two are not necessarily synonymous although in the broadest sense any employee of a state agency is a state employee." *Id.* Ultimately, based largely on a stipulation concerning the funds used to pay the plaintiff's salary, *Appeal of Ford* held that he was not entitled to state civil service protections. Although *Appeal of Ford* did not address Eleventh Amendment immunity, its reasoning laid the groundwork for two later cases that did.

In *Ashmus v. Bay Vill. City Sch. Dist. Bd. of Educ.*, Case No 1:06-cv-2364, 2007 WL 120164 at *3 (N.D. Ohio Jan. 9, 2007), the Northern District of Ohio granted STRB's motion to dismiss a federal ADEA claim based upon its entitlement to Eleventh Amendment immunity. Citing *Appeal of Ford*, the *Ashmus* court wrote: "The question of STRB's status is one of state law, and under Ohio law it is considered to be 'an instrumentality of the state.'" *Id.*, 2007 WL 120164, at *3; *see also State ex rel. Schumacher v. State Teachers Ret. Bd.*, 584 N.E.2d 1294, 1297 (Ohio Ct. App. 10th Dist. 1989) (citing *Appeal of Ford* and holding that STRB is a state agency that cannot be sued under 42 U.S.C. §1983); *see also* R.C. § 2743.01(A) (defining the "State" as including "all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state."); R.C. § 2744.01(I) ("State" includes "agencies…and other instrumentalities of the state of Ohio").

The Latin phrase *stare decisis* means "to stand by things decided."  Black's Law Dictionary (11th ed. 2019) (quotation marks and citation omitted).  As a legal doctrine, *stare decisis* requires this Court to follow controlling precedent.  Because the Eleventh Amendment immunity status of STRB has been addressed only in an unpublished federal district court decision and by an intermediary state court,[2] the cases on which STRB relies do not bind this Court.  Of course, the fact that the cases are not controlling does not mean that this Court should wholly ignore them.  Rather, the undersigned considers whether their reasoning on the issue is persuasive.

Plaintiffs urge this Court to reject the reasoning of *Appeal of Ford*, *Ashmus*, and *Schumacher* as inconsistent with the Supreme Court and Sixth Circuit's emphasis on the liability of the State for a judgment as the "foremost" of the four factors used to determine Eleventh Amendment immunity.  See *Ernst*, 427 F.3d at 369 (internal quotations and additional citations omitted); *see also Guertin*, 912 F.3d at 937 (reiterating that the first factor regarding state funding is the "most salient" and creates "'a strong presumption' on the issue.") (internal citations omitted).   Although Plaintiffs concede that the first factor can be overcome by the remaining three factors, they argue that the presumption is not rebutted here.  For its part, STRB insists that not only should this Court follow the lead of other courts that have decided the same issue, but that all four factors favor a conclusion that it is entitled to Eleventh Amendment immunity.

---

[2]Some circuits have held that when a state's highest court has determined the issue of Eleventh Amendment immunity, federal courts should accord deference to that decision.  *See, e.g., Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 244, 248 (4th Cir. 2012).  In one older case, the Sixth Circuit similarly suggested that Ohio Supreme Court decisions "would be persuasive if not conclusive." *Harrison Const. Co. v. Ohio Turnpike Com'n.*, 272 F.2d 337, 339 (6th Cir. 1959).  However, no published authority suggests that a federal district court must defer to an intermediate state court's determination of this federal constitutional issue.

### 1.  The State Treasury has Potential Liability

Based upon the acknowledged importance of the first factor, the undersigned begins by reviewing Ohio's "potential" liability.[3]  The parties agree that if STRB were ordered to pay past-due COLA allowances, that money first would be paid out of STRS's existing funds.  STRS is funded, in part, by employers.  If existing STRS funds are insufficient, a "Guarantee Fund" funded by interest from other STRS defined benefit plan funds and bequests exists to cover any shortfall.  R.C. § 3307.14(E).  If the Guarantee Fund also proves insufficient, then the deficit must be made up by additional employer contributions to STRS's Employer Trust Fund.  *Id.*

The parties disagree as to whether any part of the process by which STRS is funded, either directly or in the event of shortfalls, could subject the State treasury to liability.  They argue about the genesis of "employer contributions" that make up a significant portion of STRS and whether State funds could be required to cover potential shortfalls.  Plaintiffs maintain that the State treasury's only involvement is as a "custodian" of STRS, and that because STRS is a "self-sustaining entity" that the General Assembly does not separately fund in its annual budget, STRB should be presumed not to have Eleventh Amendment immunity.  *See generally, Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 50, 115 S. Ct. 394, 405 (1994) (denying Eleventh Amendment immunity in part because the entity at issue was not funded by any state but was "self-sustaining.").

---

[3]Although Plaintiffs suggest that the possible impact on the State treasury is extremely remote, the Sixth Circuit has rejected the argument that mere "hypothetical" liability is insufficient.  "[I]t is the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case, that controls the inquiry."  *Ernst*, 427 F.3d at 359 (internal quotations and additional citations omitted).

*Hess* is a seminal case that strongly emphasized the first factor in its analysis of whether an entity was entitled to Eleventh Amendment immunity. Importantly, however, *Hess* concerned a bistate entity called PATH that is a wholly owned subsidiary of the Port Authority of New York and New Jersey created by an interstate compact. The *Hess* Court explained that a core principle of the Eleventh Amendment - recognition that the individual States are entitled to a certain "dignity" or "respect …as members of the federation" that shields them from suit in federal court without their consent - has no application to an entity created by "three discrete sovereigns: two States and the Federal Government." *Id.* at 400 (internal quotation marks and citation omitted). In contrast to suit against a single-state entity, "[s]uit in federal court is not an affront to the dignity of a Compact Clause entity, for the federal court, in relation to such an enterprise…is ordained by one of the entity's founders." *Id.* at 401.

> [W]ithin any single State…, voters may exercise their political will to direct state policy; bistate entities created by compact, however, are not subject to the unilateral control of any one of the States that compose the federal system.
>
> Accordingly, there is good reason not to amalgamate Compact Clause entities with agencies of "one of the United States" for Eleventh Amendment purposes.

*Id.*, 115 S. Ct. at 402. Only after making clear that a compact clause entity does not implicate "sovereign dignity" under the Eleventh Amendment did the *Hess* Court turn to the second concern of the Eleventh Amendment – the preservation of the State treasury. Plaintiffs' heavy reliance on *Hess* fails to acknowledge that "sovereign dignity" remains a concern for any single State entity like STRB.

Despite this key distinction, the Supreme Court's emphasis on the State treasury remains a valid takeaway. In *Hess*, the Port Authority was financially independent and

was funded primarily from tolls, fees, and investment income.  *Id.*, 115 S. Ct. at 398-399.  There was no question that PATH was "self-sustaining" and was not funded by either New York or New Jersey.  However, PATH had argued that because it dedicated some surplus funds to public projects, a large judgment could so reduce its surplus that it would produce "an effect *equivalent* to the impact of a judgment directly against the State," because the State would then have to pay for projects that PATH had voluntarily taken on.  *Id.* at 405 (emphasis added).  The Supreme Court rejected that argument, reasoning that just as the American Red Cross would not become an "arm of the state" and acquire immunity if it aided a State, neither did PATH.  Instead, "[t]he proper focus is not on the use of profits or surplus, but …on losses and debts." *Id.* at 406.

The undersigned concludes that a loss or debt incurred by STRS potentially would impact Ohio's treasury.[4]  It is true that STRS funds are not *generally* considered to be part of the state treasury.  *See* R.C. § 3307.12; 1982 Ohio Ap. Atty. Gen. No. 82 (stating that "state funds" are distinct from "special funds" that are collected for the sole benefit of the contributors and for which the state is merely the custodian).  The majority of employers who contribute to STRS are local school boards and school districts that do not have Eleventh Amendment immunity.  On the other hand, those local school districts receive state funding on a per-pupil basis.  *See* R.C. § 334.08; R.C. § 3317.01.  For most school districts, STRS's secretary certifies the amount the employer owes to STRS before issuing funding.  State law requires such local school entities to use their state-allocated funds to make their employer contributions to STRS.  *See* § 3307.31(A) (Employer

---

[4]Unlike the instant case, in *Ernst*, Michigan law required the legislature to "annually appropriate to the retirement system the amount [of money needed]…to reconcile the estimated appropriation made in the previous fiscal year with the actual appropriation needed…."  *Ernst,* 427 F.3d at 360.

contributions "shall be made from the amount allocated under section 3314.08 or Chapter 3317 of the Revised Code prior to its distribution to the individual school districts or community schools."). For most school districts, the amount owed to STRS is simply deducted from their allocated State funds. R.C. §3307.21(A).

Additionally, institutions of higher learning contribute even more directly to STRS. Public universities have long been recognized themselves to be "arms of the state" that rely on "state funds." *See, e.g., McKenna v. Bowling Green State Univ.*, 568 Fed. Appx. 450, 456 (6th Cir. 2014); *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 305 (6th Cir. 1984). Based upon the appropriation of funds to these employers from the General Assembly, STRB maintains that state funds are in fact used to fund employer contributions to STRS, and that any increase in employer contributions required by a potential shortfall in the Guaranty Fund ultimately would come from the State treasury.

Plaintiffs argue that such funding is too attenuated to have any real impact on the State treasury. Plaintiffs rely on a Third Circuit case to argue that funds flow from the State merely as an "employer" and not as a sovereign. *See Blake v. Kline*, 612 F.2d 718, 724 (3rd Cir. 1979) (remanding for further consideration of whether Public School Employees' Retirement Board ("PSERB") was entitled to immunity); *Boatmen's First Nat'l Bank v. Kansas Pub. Employees Retirement Sys.*, 915 F. Supp. 131, 137 (W.D. Mo. 1996) ("Because the State of Kansas, as a sovereign, makes no general appropriations to KPERS, the Court finds that it acts only as an employer when it makes employer contributions to KPERS."). However, in its *en banc* decision in *Ernst*, the Sixth Circuit distinguished *Blake* because it "did not reverse the district court's conclusion that sovereign immunity barred the claim; it remanded for further consideration." *Id.*, 427 F.3d

11

at 365.[5]  And *Ernst* flatly rejected *Boatmen* as wrongly decided based on its failure to acknowledge "it is the entity's *potential* legal liability…that is relevant." *Id.* (emphasis added, citation omitted).

STRB further asserts that the "majority trend" among other courts is to hold that similar retirement systems are considered to be "arms of the state" that are entitled to immunity. *See, e.g., McGnity v. New York*, 251 F.3d 84, 100 (2d Cir. 2001) (New York State and Local Employees' Retirement System "is cloaked with Eleventh Amendment immunity"); *JMB Grp. Tr. IV v. Penn. Mun. Ret. Sys.*, 986 F. Supp. 534, 538 (N.D. Ill. 1997) (Pennsylvania Municipal Retirement System is "an 'arm' or 'alter-ego' of the Commonwealth of Pennsylvania…for purposes of the Eleventh Amendment"); *Schulthorpe v. Va. Ret. Sys.*, 952 F. Supp. 307, 310 (E.D. Va. 1997) (Virginia Supplemental Retirement System "is an 'arm of the state'" entitled to Eleventh Amendment immunity).

Returning briefly to *Appeal of Ford*, the state court there acknowledged that the STRS is "a separate legal entity" and that its funds are "not to be considered state funds in the general sense" but instead are "trust funds." *Id.* at 420.  Historically, however, the General Assembly has contributed to STRS:

> [S]ubstantial funds have been appropriated from time to time by the General Assembly from the general fund to the State Teachers Retirement System. R.C. 3307.65(F) provides that expenses for administration and management of the State Teachers Retirement System are to be paid from an expense fund. Prior to 1965, R.C. 3307.51 and 3307.67 provided for an annual assessment to be paid into the expense fund. Since the repeal of that provision in 1965, presumably funds for the expense fund are provided by transfer from the guaranty fund created by R.C. 3307.65(E) into which it

---

[5]Additionally, a more recent case held that PSERS is an "arm of the state" for jurisdictional purposes. *See Commonwealth of Pennsylvania Public School Employees' Retirement System v. Citigroup, Inc.*, 2011 WL 1937737 (E.D. Pa. May 20, 2011).

would appear would be paid any funds appropriated by the General Assembly.

*Appeal of Ford*, 446 N.E.2d at 217.  In contrast to that history, the parties in *Appeal of Ford* had stipulated that STRS receives no funds from the General Assembly:

> [I]mportantly, …it has been specifically stipulated by the parties that the board receives no funds from the General Assembly for administrative operation of the retirement system. Whether or not this is completely accurate, this case must be determined upon the basis of such stipulation, whether or not it would be conclusive in another case involving similar issues.

*Appeal of Ford*, 446 N.E.2d at 218.

Defendant STRB has made no such stipulation.  Instead, STRB has presented a relatively strong case that the statutory scheme as written and in practice results in the "potential" liability of the State treasury for additional employer contributions to STRS. Considering the case law of other jurisdictions on the issue as well as the relevant Ohio statutes, *Appeal of Ford*, *Ashmus* and *State ex rel. Schumacher v. State Teachers Ret. Bd.*, the undersigned is persuaded that the first factor of the Eleventh Amendment immunity analysis favors STRB.

### 2.  The Remaining Three Factors

Even if a reviewing court were to disagree with the undersigned's analysis of the first factor relevant to the Eleventh Amendment inquiry, STRB persuasively argues that analysis of the remaining three factors overcomes any presumption that the State treasury could not be impacted.  The Sixth Circuit consistently has resisted attempts to elevate the state-treasury inquiry to a degree that would eliminate consideration of the remaining three factors of its four-factor test:

> While there can be little doubt that the state-treasury inquiry will generally be the most important one, it also seems clear that it is not "the sole criterion

13

> for determining whether an agency is a state entity for sovereign immunity purposes." *S.J.,* 374 F.3d at 421. "[T]he sovereign immunity doctrine is about money *and* dignity - it not only protects a State's treasury, but also 'pervasively ... emphasizes the integrity retained by each State in our federal system.'"

*Ernst*, 427 F.3d at 364 (citing *Hess*, 513 U.S. at 39, emphasis original, additional citations omitted). The remaining three factors must be considered in light of this second core principle of the Eleventh Amendment, which applies to STRB.

### a. State statutes, Case Law, and the Degree of State Control

Plaintiffs implicitly concede that the referenced statutes and case law weigh in favor of Eleventh Amendment immunity. *See Appeal of Ford*, 446 N.E.2d at 216. ("The board, a creature of statute, can exercise only such powers as have been conferred upon it by statute."). To counter that authority, Plaintiffs argue that other indicia of state control are lacking. Plaintiffs assert that "STRS and the Board operate with a high degree of autonomy that is unique among public pension systems," because STRB has the power to "do all things necessary to carry out such sections" and "full power" to make its own investment decisions. *See* Doc. 27 at 8, citing Ohio R.C. §§ 3307.03, 3307.15. However, the fact that an instrumentality of the state retains some autonomy does not outweigh the strong support this factor provides in favor of immunity. *Accord Appeal of Ford*, 446 N.E.2d at 216 (holding that STRS may be "a separate and independent agency" established to oversee school employee retirement funds, but that such independence "is from other school authorities, including the State Board of Education, not from the General Assembly of the state itself.") (additional internal quotation marks and citation omitted).

14

### b. Whether State or Local Officials Appoint the Board Members

Plaintiffs also argue that the third factor- whether state or local officials appoint the board members – also weighs against a finding that the Board is an instrumentality of the State.  I disagree.  No local officials appoint the members of the Board.  By statute, the Governor, State Treasurer, Speaker of the House, and Senate President appoint four members of the Board.  R.C. § 3307.05(A)-(C).  Five additional members are "contributing members" and two are "retired teacher members" who are elected by the members and beneficiaries as a whole, on a state-wide basis.  *See* R.C. § 3307.05(D) - (E); *Appeal of Ford*, 446 N.E.2d at 215 (Emphasizing that in addition to the appointed members, "[t]he election is statewide in scope.").  Pursuant to Ohio R.C. § 171.01, an "Ohio retirement study council" comprised partly of members of the General Assembly oversees several public employee retirement systems, including STRS.

### c. Whether the Functions Fall Within the Purview of State Government

Last, Plaintiffs contend that the "provisions of pensions is not a traditional governmental function." (Doc. 27 at 9).  In *Ernst*, however, the Sixth Circuit held that a Michigan retirement system set up for the benefit of its state judiciary had

> far more in common with a traditional state function than a local one. Doubtless, a local government may create and fund a retirement system, and many local governments do just that. But when, as in this case, the retirement system is funded by annual appropriations from the state legislature, operates in part through the Michigan Treasury and in part through the State's Department of Management and Budget, operates on a statewide basis and serves the officers of one of three essential branches of state government (the judiciary) as well as several other state-wide officials, it is fair to say that the retirement system performs a traditional state function.

*Ernst*, 427 F.3d at 361. The fact that STRS is not directly funded through annual appropriations does not sufficiently differentiate it from other state-wide retirement funds established for the benefit of the state. As stated in *Appeal of Ford*, the Ohio Supreme Court has established that the State Teachers Retirement Board was created as "a substantial and integral factor in securing and retaining qualified teachers, thus improving the quality of instruction in the public school system" for the benefit of Ohio. *Id.* at 216 (citing *State Teachers Retirement Bd. v. Bd. of Tax Appeals*, 202 N.E.2d 418 (Ohio 1964)).

> Clearly, the State Teachers Retirement Board exercises its powers throughout the state with respect to each and every school district in the state, as well as all state-supported colleges and universities. Therefore, there can be no other conclusion but that the State Teachers Retirement Board is a state agency.

*Appeal of Ford*, 446 N.E.2d at 216.

### B. The State has not Waived Immunity

Absent an expressed waiver, the Eleventh Amendment bars suit against a state or one of its agencies or departments in federal court "regardless of the nature of the relief sought.*" Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900 (1984); *see also Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057 (1978); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347 (1974). This immunity is far reaching. It bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens. *See Pennhurst,* 465 U.S. at 100-01; *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504 (1890). Having determined that STRB is entitled to Eleventh Amendment immunity, it is immune

from this lawsuit unless Ohio has waived its sovereign immunity. *Mixon v. Ohio,* 193 F.3d 389, 396-97 (6th Cir.1999).

Relying on a series of statutory provisions, Plaintiffs argue that Ohio has waived immunity for STRB. In 1993, Ohio R.C. § 3307.03 stated that the "[STRS] Board may sue or be sued." To support their proposition that Ohio has waived its immunity to allow the instant lawsuit in <u>federal</u> court, Plaintiffs cite to R.C. § 3307.131, adopted in 2017, which states: "Any action brought against the [STRS] or [STRB] or its officers, employees, or board members in their official capacities shall be brought in the *appropriate* court in Franklin [C]ounty, Ohio." *Id.* (emphasis added). Plaintiffs note that other statutory provisions concerning actions against other state agencies more specifically identify the "court of common pleas of Franklin County" whereas § 3307.131 only refers to "the appropriate court." *Compare* Ohio R.C. § 3772.35 and R.C. § 4301.31. Plaintiffs assert that the "implication" is that Ohio intended to waive immunity in both state and federal courts. Leaping from state court to federal court and over geographical boundaries, Plaintiffs further reason that because the United States District Court for the Southern District of Ohio has a court in Franklin County, suit is valid in this federal Court.[6]

In order to waive immunity from suit in federal court, however, a State must either "voluntarily invoke" federal jurisdiction, "or else…make[] a 'clear declaration' that it intends to submit itself to" federal jurisdiction. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 676 (1999) (citing *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906) and *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)). In *College Savings Bank*, the Supreme Court held that a State does

---

[6] Plaintiffs stop short of explaining why the instant lawsuit, filed in the Cincinnati (Hamilton County) division also should be deemed to have been filed in an "appropriate" court.

not consent to suit in federal court "merely by stating its intention to 'sue and be sued.'" *Id.* (additional citation omitted). The Supreme Court flatly rejected the notion that a "clear declaration" of waiver could be construed or implied as Plaintiffs here suggest. *Id.* 527 U.S. at 678 ("there is 'no place' for the doctrine of constructive waiver in our sovereign-immunity jurisprudence.'"); *accord Akers v. Cty of Bell*, 498 Fed. Appx. 483, 490 (6th Cir. 2012) (holding that waiver of sovereign immunity in Kentucky statute applied only in state courts and did not waive immunity in federal courts). Accordingly, Ohio has not consented to suit against STRB in this federal court.

## IV. Analysis of the Board Members' Motion

### A. The Board Members' Assertion of Eleventh Amendment Immunity

Plaintiffs initially filed suit only against STRB. After STRB filed a motion to dismiss in which it raised the issue of its Eleventh Amendment immunity, Plaintiffs filed an amended complaint that named each of the individual Board members who voted on the elimination of the COLA as additional Defendants. Although *Ex parte Young*, 209 U.S. 123 (1908) allows state officials to be sued in federal court under limited circumstances, Plaintiffs do not claim that an *Ex parte Young* exception applies. (Doc. 28 at n.2). Therefore, any duplicative claims against the individual Board members in their official capacities would be barred by the same doctrine of sovereign immunity to which the STRB as a whole is entitled.

The Board members argue that even though Plaintiffs "purport" to sue them in their individual capacities, the only allegations against them pertain to actions taken collectively as the Board. As such, the Board members encourage this Court to disregard Plaintiffs' allegation that the Board members are in fact being sued in their individual capacities,

and to instead conclude based on the substantive allegations that Plaintiffs claims are "actually asserted" against them in their official capacity. *See Lambert v. Clancy*, 125 Ohio St. 3d 231, 235, 927 N.E.2d 585 (2010).

Defendants' argument has some facial appeal. And to the extent that any reviewing court were to accept it, the undersigned agrees that duplicative claims against the individual Board members in their official capacities are barred by the Eleventh Amendment. However, it is one thing to look beyond the <u>caption</u> of a complaint and quite another to ignore allegations in a complaint in the context of a motion to dismiss.[7] The case law cited by the Board members does not support the proposition that this Court may ignore allegations that unambiguously confirm Plaintiffs' intention to sue the Board members in their individual capacities. *Contrast Lambert*, 927 N.E.2d at 589-590 (clerk of courts was sued in his official capacity where prior federal complaint had named him in his official capacity, and state court complaint did "not add the words 'personally,' 'individually,' 'an employee of the Hamilton County Clerk of Courts,' or anything similar to denote that he is being sued in his individual capacity as a county employee…."); *see also Parmertor v. Chardon Local Schools*, 47 N.E.3d 942, 950 (Ohio Ct. App. 2016) (plaintiffs generally alleged that "all Defendants[] committed intentional torts" but did not mention the individual Board members, and specifically alleged only that the individual Board members "were acting in the course and scope of their duties as board members"). In contrast to *Parmertor*, multiple counts are pleaded against the Board members individually rather than STRB. Also unlike *Parmertor*, Plaintiffs allege that the individual

---

[7]Plaintiffs assert that the fact that the individual Board members "acted to exceed the scope of their statutory authority in the same manner," and at the same moment when they voted to rescind the COLA is of no consequence. (Doc. 28 at 4). Whether or not that is true, the undersigned agrees the issue cannot be determined in the context of a pre-discovery motion to dismiss.

Board members "acted unlawfully" and "outside the scope of their statutory authority" by rescinding the COLA. (*See* Doc. 14 at ¶¶66-71, 79-86; 95-104).

### B. The Board Members are Entitled to Qualified Immunity

The Board members also are entitled to qualified immunity on all of Plaintiffs' federal claims, including Count II (Impairment of Contract), Count IV (Unconstitutional Taking), Count VI (violation of procedural due process); and Count VII (violation of substantive due process). Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201, 121 S.Ct. 2151 (2001). In order to overcome this affirmative defense, Plaintiffs must show that a "reasonable" Board member would have understood that his or her vote to reduce the COLA in 2017 violated Plaintiffs' constitutional rights, because "existing precedent…placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2013). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083-84 (2011)).

Plaintiffs maintain that they have asserted several bases for their alleged constitutional claims, including under the Contract Clause, the Takings Clause, and the

20

Due Process Clause (both substantive and procedural). Plaintiffs' Contract Clause claim requires proof of a contract that Defendants violated. Their Takings Clause and Due Process Clause claims require proof of a property interest. Property interests are created by state law, and include contractual interests. [8] Defendants strongly contest all claims on the merits. The undersigned finds it unnecessary to delve too deeply into the merits of Plaintiffs' claims, because no contractual right or other property right was "clearly established" at the time Defendants voted to reduce the annual COLA. *See generally Pearson v. Callahan*, 555 U.S. 223, 227(2009) (holding that courts may grant qualified immunity on the ground that a right was not "clearly established" by prior case law without resolving the question of whether the purported right exists at all).

Plaintiffs assert a protected property interest in the annual COLA based upon the language contained in Ohio R.C. § 3307(A). However, Plaintiffs have pointed to no controlling Supreme Court, Sixth Circuit or Ohio Supreme Court precedent – or to any case law at all - that supports their interpretation of that specific statutory language. Plaintiffs focus on the word "shall" in the phrase "the state teachers retirement board shall annually increase each allowance or benefit payable under the STRS defined benefit plan," but that language is preceded by "[e]xcept as provided" language. Casting even more doubt on Plaintiffs' claims to any type of contractual interest or other form of property right, the General Assembly included a statement of its intent that "no member has a legitimate expectation of any particular future cost-of-living adjustment…under Ohio law."

---

[8]Plaintiffs argue that their due process claims are not dependent on the existence of a vested contractual right, but instead, are based upon their allegation that the Defendants violated Ohio's mandatory procedures for reducing the COLA. (Doc. 27 at 16). But before Plaintiff can claim standing to pursue any due process right, they must first show that they have a constitutionally protected property right in the COLA, created under state law. Plaintiffs point to no basis for their assertion of a property right that is independent of the alleged contractual right under the statute.

Sub.S.B. No. 342, Section 7, 129th General Assembly.  Although Plaintiffs point to other statements to support their contention that the legislature intended to limit STRB's ability to reduce the COLA, the undersigned finds Plaintiffs' asserted contractual or property interests in the COLA to be far from "beyond debate."  *Reichle*, 132 S. Ct. at 2093.

To support their claim of an "entitlement" or property interest (even if that interest was not vested), Plaintiffs rely on *Kahles v. City of Cincinnati*, 2015 WL 5016505 (S.D. Aug. 25, 2015), an unpublished case in which the court granted summary judgment to the City on plaintiffs' claims that the Board of Trustees of the City's retirement system wrongfully terminated their disability benefits in violation of due process.  Aside from the fact that an unpublished decision cannot serve as definitive authority, *Kahles* was based upon a city ordinance concerning *disability* benefits.  It is worth noting, as the court did in *Kahles*, that a significant body of case law holds that disability benefits, once awarded, are an "entitlement" (i.e., a type of property interest) to which due process protection attaches.  Before awarding judgment to the City on grounds that it had provided all the process that was due, the court rejected the City's preliminary argument that the disability benefits were not a cognizable property interest to which due process could attach.

> Plaintiffs need not demonstrate that their benefits are "vested" under local or state law in order to show a "legitimate entitlement" to those benefits. Each of the Plaintiffs was injured or suffered some condition that entitled each of them to receive a disability retirement allowance under the City Code's definition of "disability." Plaintiffs continued to receive those benefits, in some cases for many years. The only basis upon which the Board could reduce or discontinue the benefits is defined in the Code, and is not left to the Board's unfettered discretion. The Court finds these facts are sufficient to establish [a property] interest in the receipt of the benefits that is protected by procedural due process.

*Id.* at *5.

Unlike the disability benefits at issue in *Kahles*, there is no significant body of case law to suggest that a state pension-related COLA constitutes a type of property interest to which due process attaches.[9]  Plaintiffs' reliance on other statutory provisions does not clear things up to the point that the constitutional rights asserted are "beyond debate." Having determined that the individual Board members are entitled to qualified immunity, Plaintiffs' state law claims also should be dismissed.  *See Musson Theatrical v. Fed. Express. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996).[10]

## V.      Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT** the motions to dismiss filed by both STRB (Doc. 22) and by the Board members (Doc. 24) be **GRANTED IN FULL** and that all claims be dismissed, with this case to be terminated from the docket of this Court.


*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[9]As Defendants point out, a great deal of case law holds to the contrary, including a Sixth Circuit case that rejected similar arguments under Kentucky law.  *See, e.g., Puckett v. Lexington-Fayette Urban County Gov't*, 833 F.3d 590 (6th Cir. 2016) (holding that Kentucky law does not create a constitutionally protected contractual right or property right in a specific COLA formula, discussing case law from other jurisdictions). *Puckett* is highly persuasive, notwithstanding Plaintiffs' attempts to distinguish it.

[10]The Board members further argue that Ohio Rev. Code § 9.86 requires dismissal of all state law claims against them because Plaintiffs have not satisfied the condition precedent by obtaining a ruling from the Ohio Court of Claims as to whether the individual Board members are entitled to immunity.  *See Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). Plaintiffs dismiss Defendants' § 9.86 argument in a footnote as "irrelevant because that provision applies [only] to state employees."  (Doc. 28 at 5). The undersigned finds it unnecessary to discuss this argument in depth, but notes that in *Appeal of Ford*, 446 N.E.2d at 217, the state court confirmed that "in the broadest sense any employee of a state agency is a state employee…."

23

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DEAN DENNIS, et al.,

                                        Case No. 1:19-cv-00386

        Plaintiffs,                            Black, J.
                                                  Bowman, M.J.

    v.

STATE TEACHERS RETIREMENT BOARD, et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

24