## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DEAN DENNIS, *et al.*, | : | Case No. 1:19-cv-386 |
| | : | |
| Plaintiffs, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Stephanie K. |
| vs. | : | Bowman |
| | : | |
| STATE TEACHERS RETIREMENT | : | |
| BOARD, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## DECISION & ENTRY ADOPTING THE REPORT AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 37)

This civil case is before the Court on the Order of Referral (Doc. 4) to Magistrate Judge Stephanie K. Bowman.  Pursuant to that Order, the Magistrate Judge submitted a Report and Recommendations (the "Report") on July 28, 2020.  (Doc. 37).  The Report discusses the two pending motions to dismiss (Docs. 22, 24), and the parties' responsive memoranda (Docs. 27, 28, 29, 31).  Plaintiffs submitted objections to the Report.  (Doc. 39).  Defendants responded to those objections.  (Docs. 40, 41).

## I.  BACKGROUND

The Magistrate Judge detailed the allegations in Plaintiffs' complaint in the Report, which allegations the Court incorporates here.  (Doc. 37 at 2–4).

In short, Plaintiffs Dean Dennis and Bob Buerkle are retired public school teachers, seeking to bring a class action on behalf of themselves and all similarly situated individuals benefiting from the State Teachers Retirement System ("STRS")'s defined benefit plan.  (Doc. 14 at ¶¶ 1, 6–7).  Defendants are the State Teachers Retirement Board

("STRB") and the STRB's individual board members (the "Individual Defendants").  (*Id.* at ¶¶ 8–10).

The STRB administers the STRS.  The STRS's defined benefit plan is funded by three sources: (1) employee contributions, currently 14% of the employee's annual salary; (2) employer contributions; and (3) investment earnings from the foregoing contributions.  (*Id.* at ¶ 14).

This lawsuit concerns a retiree's cost of living allowance ("COLA") under the plan.  Pursuant to Ohio Rev. Code § 3307.67(A):

> Except as provided in divisions (D) and (E) of this section, the state teachers retirement board shall annually increase each allowance or benefit payable under the STRS defined benefit plan.  Through July 13, 2013 the increase shall be three per cent.  On and after August 1, 2013, the increase shall be two percent.

Subsection (E) of this section provides that the STRB "may adjust the increase payable" for the COLA if the STRB's actuary, when evaluating the STRS, "determines that an adjustment does not materially impair the fiscal integrity of the retirement system or is necessary to preserve the fiscal integrity of the system."  Ohio Rev. Code § 3307.67(E).

On April 20, 2017, the STRB eliminated the COLA increases.  (Doc. 14 at ¶ 48). Plaintiffs state this was in error for three reasons.

First, Plaintiffs contend the STRB "relinquished any right" to reduce the COLA when, in 2013, the STRB adopted Ohio Admin. Code 3307:1-10-01.  This administrative code states that the STRB "shall annually increase each allowance or benefit payable under the defined benefit plan by two percent," and the code does not reserve the right to

adjust allowances based on an actuary determination. *Id*. (emphasis added). (*See also* Doc. 14 at ¶¶ 42, 49).

Second, Plaintiffs also contend that they have a "vested right" to annual COLA increases, pursuant to Ohio Rev. Code § 3307.42(A), which provides:

> [T]he granting to any person of an allowance, annuity, pension or other benefit under the STRS defined benefit plan… pursuant to an action of the state teachers' retirement board vests a right in such person, so long as the person remains the beneficiary of any of the funds established by section 3307.14 of the Revised Code, to receive the allowance, annuity, pension, or benefit at the rate fixed at the time of granting the allowance, annuity, pension, or benefit.

(*See also* Doc. 14 at ¶¶ 27, 49).

Third, even if the STRB could adjust the COLA, the STRB failed to follow the requirements when adjusting the COLA because no actuary provided a report or determined a change was necessary to preserve the fiscal integrity of the system. (*Id*. at ¶¶ 50–51).

Thus, because of the STRB's decision to eliminate the COLA, Plaintiffs brought this suit, alleging violations of federal and state constitutions, breach of contract, breach of fiduciary duty, and unjust enrichment. (*See generally, id*.) Plaintiffs seek declaratory and injunctive relief, monetary damages and/or restitution, interest, and fees and costs. (*Id*. at 30, Prayer for Relief).

## II.  STANDARD OF REVIEW

### A.     Review of Report and Recommendation

Pursuant to 28 U.S.C. § 636(b), the District Court may refer dispositive motions, including motions to dismiss, to a United States Magistrate Judge.  Upon such reference, the Magistrate Judge must promptly submit a Report and Recommendation, providing a recommended disposition of the motion, as well as proposed findings of fact.  *Id*.; Fed. R. Civ. P. 72(b).  Within 14 days of service of a Magistrate Judge's Report, the parties may serve and file specific written objections to the Report for the District Judge's consideration.  *Id*.

If objections are filed, the District Judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to…[and] may accept, reject, or modify the recommended disposition…."  Fed. R. Civ. P. 72(b)(3).  Thus, the district judge is not required to review *de novo* every issue raised in the original motion, but only those matters from the Report and Recommendation that received proper objections.  *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

"[W]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's notes (citations omitted).  The Supreme Court has stated: "It does not appear that Congress intended to require district court review of magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to these findings."  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

**B.** **Motion to Dismiss – 12(b)(6)**

Both parties agree that the Magistrate Judge used the correct standard of review for a motion to dismiss for failure to state a claim. (Doc. 37 at 1–2). The Court does not reiterate that standard here.

**C.** **Motion to Dismiss – 12(b)(1)**

The STRB also moved to dismiss Plaintiffs' complaint for lack of jurisdiction based on Eleventh Amendment immunity. Although the Report did not explicitly detail the standard of review for a motion to dismiss for lack of jurisdiction, the Magistrate Judge's analysis hinges on whether this Court lacks jurisdiction due to Eleventh Amendment immunity. Accordingly, this Court modifies the Report's standard of review section to also include the following standard of review.

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to assert Eleventh Amendment immunity. *Lee Testing & Eng'g Inc. v. Ohio DOT*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012). In response to a challenge under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (cleaned up).

Defendants moving under this Rule have two options—a facial attack of the pleadings, or a factual attack. *Ball by Burba v. Kasich*, 244 F. Supp. 3d 662, 671–72 (S.D. Ohio 2017). A facial attack on jurisdiction goes to whether the plaintiff has properly alleged a basis for jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.

1990).  In a factual attack, the Court must weigh the "evidence [before it] to arrive at the factual predicate that [] jurisdiction exists or does not exist." *Id*.

### III.  ANALYSIS

#### A.     Individual Defendants

The Individual Defendants moved to dismiss Plaintiffs' claims against them. (Doc. 24).  Plaintiffs allege only individual capacity claims against the Individual Defendants.  (Doc. 14).  The Magistrate Judge recommends dismissing all claims against the Individual Defendants based on qualified immunity.  (Doc. 37 at 20–23).  Plaintiffs do not object to the Magistrate Judge's Report as to the Individual Defendants.

The undersigned is satisfied that there are no clear errors in the Magistrate Judge's Report when discussing the application of qualified immunity to the claims against the Individual Defendants.  Accordingly, the Report as to the Individual Defendants is hereby **ADOPTED**, the motion to dismiss (Doc. 24) **GRANTED**, and the claims against the Individual Defendants **DISMISSED with prejudice**.

#### B.     The STRB

The Magistrate Judge recommends dismissing Plaintiffs' claims against the STRB based on Eleventh Amendment immunity.  (Doc. 37 at 4–16).   The STRB is entitled to Eleventh Amendment immunity if it operates as an arm of the State.  *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 325 (6th Cir. 2010).  The STRB bears the burden of showing that it operates in this capacity.  *Id*. at 324.  In assessing whether a public entity is an "arm of the State" entitled to Eleventh Amendment immunity or a "political subdivision" not entitled to that immunity, we consider four factors:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (citations omitted).  Of these, "the state's potential legal liability for a judgment against the defendant is the foremost factor to consider in our sovereign immunity analysis."  *Lowe*, 610 F.3d at 325.

The entirety of Plaintiffs' objections attacks the Magistrate Judge's analysis of each of the four factors; thus, the Magistrate Judge's ultimate recommendation that the STRB is entitled to Eleventh Amendment immunity and its motion to dismiss should be granted.  (*See generally,* Doc. 39).[1]  The Court will discuss each factor and as discussed, *infra*, agrees with the Magistrate Judge's well-reasoned analysis.

### 1.    The State's Potential Liability for a Judgement Against the Entity

The Magistrate Judge determined that this factor weighed in favor of the STRB because the State would face potential liability for a judgment against the STRB.  (Doc. 37 at 8–13).  When reaching this conclusion, the Magistrate Judge provided a detailed and thorough analysis of the relevant case law and state statutes governing the STRB and the STRS.  (*Id.*)

Plaintiffs assert three objections: (1) the Magistrate Judge ignored and/or went beyond the allegations in the complaint, making an incorrect factual determination that

---

[1] Plaintiffs do not object to the Magistrate Judge's determination that the STRB did not waive immunity.  (Doc. 37 at 16–18).

the General Assembly has historically contributed to the STRS; (2) the Magistrate

Judge's "ruling appears to be premised on the assumption" that the State would bail out

the STRS if it ran out of funds; and (3) the STRS funds are not state funds, but trust funds

held to the benefit of members. (Doc. 39 at 4–9). These objections are not well-taken.

First, the Magistrate Judge was not solely bound to the allegations in Plaintiffs'

complaint. "Eleventh Amendment immunity is a true jurisdictional bar that courts can—

but are not required to—raise *sua sponte* at any stage in the litigation, and once raised as

a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*,

784 F.3d 1037, 1046 (6th Cir. 2015). In this case, the STRB makes a factual attack on

jurisdiction, *i.e.* whether it is entitled to such Eleventh Amendment immunity. When a

factual attack is made, "we do not presume the truth of factual allegations pertaining to

our jurisdiction to hear the case." *Id*. at 1045.

Moreover, the Magistrate Judge's reasoned analyses was based in publicly

available information: prior case law, statutes, and legislative history. Thus, even if the

Magistrate Judge was bound to assume the allegations in the complaint were true – which

the Magistrate Judge was not – it was not improper to consider the relevant case law, the

language of the statutes in dispute, and matters of public record. *Amini v. Oberlin Coll.*,

259 F.3d 493, 502 (6th Cir. 2001).[2]

---

[2] Plaintiffs' objection that the Magistrate Judge considered evidence outside of the pleadings is
also not well-taken because Plaintiffs have submitted evidence beyond the complaint in a notice
filed after the Report was submitted. (Doc. 45). Plaintiffs noticed an email, sent from one of the
Individual Defendants to a retired teacher, purporting to show that the STRS receives no funds
from the State treasury because the Individual Defendant writes: "Pensions in Ohio are NOT
guaranteed by the state. STRS is on its own if we get into trouble." (Doc. 45-1 at 5). Although

Plaintiffs' second objection contends that the Magistrate Judge implicitly assumed that the State would bail out the STRS if it ran out of funds.  In support of this objection, Plaintiffs contend "that the Magistrate [Judge][3] reasoned that 'any increase in employer contributions required by a potential shortfall in the Guarant[ee] Fund *ultimately* would come from the State treasury.'"  (Doc. 39 at 6 (citing Doc. 37 at 11) (emphasis added by Plaintiffs)).

First, Plaintiffs' objection is not-well taken because this cherry-picked quote from the Report is not one of the Magistrate Judge's conclusions, rather it was the Magistrate Judge's summation of what the "STRB maintains."  (Doc. 37 at 11).  Second, the Magistrate Judge's conclusion that the State treasury faces potential liability if judgment is entered against the STRB was based on an analysis of the relevant Ohio statutes, Ohio

---

this email clearly weighs in Plaintiffs' favor, it does not change the statutory scheme, that the State treasury is <u>potentially</u> liable, or the balancing of all four *Ernst* factors, discussed *infra*.

[3] Plaintiffs incorrectly refer to the Magistrate Judge as "Magistrate" throughout their objections. As iterated by Judge Bowman in *Lucas v. DeSilva Auto. Servs.*, No. 1:16-CV-790, 2018 WL 2020744, at *1, n.2 (S.D. Ohio May 1, 2018), *report and recommendation adopted*, No. 1:16-CV-00790-MRB, 2019 WL 1440458 (S.D. Ohio Mar. 31, 2019):

> Shakespeare once famously wrote that a rose "by any other name would smell as sweet." Still, lawyers and judges strive to be precise. [] Plaintiff[s] both misidentify the undersigned as "Magistrate" rather than "Magistrate Judge." The title of Magistrate no longer exists in the U.S. Courts, having been changed to "Magistrate Judge" in 1990. *See* Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, § 321 (1990). In federal court, the designation "Magistrate" before "Judge" is an adjective that denotes the type of federal judicial officer, similar to the use of the word "Bankruptcy" in describing a U.S. Bankruptcy Judge.  Thus, the correct title for a judicial officer with the surname of Smith would be "Magistrate Judge Smith" or "Judge Smith," not Magistrate Smith.

cases, case law from this jurisdiction related to Eleventh Amendment immunity and retirement systems, and similar case law of other jurisdictions. (*Id*. at 13). This Court finds no error in the Magistrate Judge's analysis.

Of import to the first factor in this case are the relevant statutes: Employers deduct a contribution to the STRS from an employee's payroll each period. Ohio Rev. Code § 3307.29. Employers are also required to contribute a certain rate to the STRS. *Id*. at § 3307.28. Employers must deduct the entire amount of employer contributions to the STRS from the amounts allocated to the employer from the State. *Id*. at § 3307.31 (citing *id*. at §§ 3314.08, 3317, 3326.33). Thus, employer contributions to the STRS flow from the State treasury to the employer to the STRS. As the Magistrate Judge explained, this leads to <u>potential</u> liability for the State treasury if judgment is entered against the STRB because employers make their contributions to the STRS from the amounts allocated by the State treasury. If employers cannot satisfy such contributions, <u>potential</u> liability of the State may trigger.

Plaintiffs' final objection to this factor is that the STRS funds are not state funds, but trust funds; thus, it was error to determine that the State treasury would be liable for any loss or debt incurred by the STRS. (Doc. 39 at 7–8). To support this objection, Plaintiffs contend that, in the event there is a shortfall in STRS contribution, the STRB cannot turn to the State treasury to make up that shortfall. (*Id*. (citing Ohio Rev. Code § 3307.30)). According to Plaintiffs, pursuant to Ohio Rev. Code § 3307.14, if the STRS maintains insufficient funds to provide required benefits, and if the STRS's "Guarantee

Fund," *i.e.,* if the emergency fund is also insufficient, the employer – not the State treasury – must make up the difference.

However, like Plaintiffs' second objection, this objection also fails. To be sure, an employer may also contribute to the STRS through other funding. Ohio Rev. Code. § 3307.14. However, as detailed, employers are mandated to use state appropriated funds for the entire amount of STRS contributions owed. Money is still potentially flowing from the State treasury, warranting immunity. Moreover, the statutory scheme contemplates that the State treasury will make contributions to the STRS:

> All amounts due the state teachers retirement system from the state treasury pursuant to this chapter shall be promptly paid upon warrant of the director of budget and management pursuant to a voucher approved by the director.

Ohio Rev. Code § 3307.32. Thus, considering the foregoing, Plaintiffs' objections are not well-taken.[4]

The Court recognizes that the overarching theme of Plaintiffs' objections to this factor is that the STRS is self-sustaining and autonomous – the State treasury is not required to guarantee funds to the STRS and is not <u>actually</u> liable for any judgment entered against the STRB. Plaintiffs miss the mark.

---

[4] The Magistrate Judge also found persuasive how institutions of higher learning, *e.g.,* public universities, contribute even more directly to the STRS and have long been considered "arms of the state" that "rely on state funds." (Doc. 37 at 11). In such cases, the State treasury, the public university, and the STRS are even more closely wound together, warranting immunity. Plaintiffs do not object to this reasoning or conclusion. One of the two named plaintiffs, according to the amended complaint, taught at such public universities, Miami University and Cincinnati State. (Doc. 14 at ¶ 7).

The Supreme Court in *Hess* linked this inquiry to the following:

> The proper focus is not on the use of profits or surplus, but rather is on losses and debts. If the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise? When the answer is "No"—both legally and practically—then the Eleventh Amendment's core concern is not implicated.

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994).  In this instance, the answer is "potentially."

If the STRB is liable, damages will come from the STRS, its Guarantee Fund, or employers.  Ohio Rev. Code § 3307.14.  As discussed, the state statutes dictate that each employer is required to deduct entire contributions to the STRS from those state appropriated amounts.  *Id*. at § 3307.31.  Thus, the money will come from the State treasury through the employer, or the State treasury may simply pay the amount owed. *Id*. at § 3307.32.  In this instance, the answer to the *Hess* question may be undoubtedly: "Yes."   Alternatively, the Court also recognizes Plaintiffs' argument that employer contributions to the STRS may flow from other sources, *e.g.,* a tax levy.  *Id*. § 3307.14. In this instance, if the STRB were liable and no employer could fully fund their contributions through State treasury appropriations, the answer to the *Hess* question may be undoubtedly: "No."

The answer here is not so black and white, not so always or never legal liability. The answer, instead, lies in between, in the realm of **potential** legal liability.  And, such liability is enough to warrant Eleventh Amendment immunity, particularly when weighed with the other factors.  As the Magistrate Judge quoted in the Report:

> While there can be little doubt that the state-treasury inquiry will generally be the most important one, it also seems clear that it is not the sole criterion for determining whether an agency is a state entity for sovereign immunity purposes. The sovereign immunity doctrine is about money *and* dignity—it not only protects a State's treasury, but also pervasively emphasizes the integrity retained by each State in our federal system.

*Ernst*, 427 F.3d at 364 (cleaned up). The weighing of the four *Ernst* factors supports these two core principles. Thus, the Court now turns to factors two through four.

### 2. The Language By Which State Statutes and State Courts Refer to the Entity and the Degree of State Control and Veto Power Over the Entity's Actions

"Under *Ernst*, the second factor includes four considerations: (1) how state statutes refer to the entity; (2) how state courts refer to the entity; (3) the degree of state control over the entity; and (4) the state's veto power over the entity's actions." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 777 (6th Cir. 2015) (citing *Ernst*, 427 F.3d at 359).

The Magistrate Judge found that Plaintiffs "implicitly concede[d]" that both state statutes and how state courts[5] refer to the STRB/STRS weigh in favor of the STRB. (Doc. 37 at 14). Plaintiffs do not object. Plaintiffs, however, argue that the Magistrate Judge erred by not recognizing that the State's control or veto power over the STRB or the STRS is "essentially nonexistent." (Doc. 39 at 10). Thus, in Plaintiffs' view, this factor should not favor the STRB.

---

[5] *See, e.g., State ex rel. Schumacher v. State Teachers Ret. Bd.*, 584 N.E.2d 1294 (Ohio Ct. App. 1989) (holding STRB a state agency); *Appeal of Ford*, 446 N.E.2d 214 (Ohio Ct. App. 1982) (STRB a "public agency created by statute"); *see also Ashmus v. Bay Vill. City Sch. Dist. Bd. Educ.*, Case No. 1:06-cv-2364, 2007 WL 120164 (N.D. Ohio Jan. 9, 2007) (dismissing suit against the STRB based on Eleventh Amendment immunity).

The Court disagrees. There is no dispute that the STRB maintains a high level of autonomy from State control; however, the STRB's level of autonomy is dictated by state statute, which statutes Plaintiffs readily cite. (*Id*. (citing Ohio Rev. Code §§ 3307.03, 3307.04, 3307.15)). Moreover, as the Magistrate Judge discussed in the third factor, Ohio Rev. Code § 171.01 establishes the "Ohio retirement study council," which council reviews the policies, objectives, and criteria of the state retirement systems and boards, like the STRB, and submits a report to the Governor and General Assembly. The report includes: "asset allocation targets and ranges, risk factors, asset class benchmarks, time horizons, total return objectives, relative volatility, and performance evaluation guidelines." *Id*. at § 171.04(D). Thus, even if the council cannot veto certain acts of the STRB, this council's existence pursuant to statute indicates that the State has shown its intent to assert some level of control over and/or review of the STRB and the STRS.

In total, the Court weighs all the considerations of the second factor, not only control or veto power. "The caselaw analyzing Eleventh Amendment immunity has not treated the *Ernst* factors, or the considerations relevant to any one of them, as a checklist that must be satisfied to establish immunity." *Kreipke*, 807 F.3d at 777–78 (emphasis added). "Rather, the *Ernst* factors are weighed and balanced against each other based on the unique circumstances of the case." *Id*. at 778 (collecting cases).

Here, the considerations of the second factor – State statutes and case law, control, and veto power – favor the STRB when weighed and balanced.

### 3. Whether State or Local Officials Appoint the Board Members of the Entity

The Magistrate Judge determined that this factor did not weigh against finding that the STRB is an arm of the state because:

> No local officials appoint the members of the Board. By statute, the Governor, State Treasurer, Speaker of the House, and Senate President appoint four members of the Board. R.C. § 3307.05. Five additional members are "contributing members" and two are "retired teacher members" who are elected by the members and beneficiaries as a whole, on a state-wide basis." *See* R.C. § 3307.05(D)–(E); *Appeal of Ford*, 446 N.E.2d at 215 (Emphasizing that in addition to the appointed members, "[t]he general election is statewide in scope.")

(Doc. 37 at 15). Plaintiffs contend that the Magistrate Judge erred when stating that the elected members of the STRB are elected on a "state-wide basis" because one's eligibility to vote depends on whether one is a member of the STRS, not an Ohio resident. (Doc. 39 at 11). Thus, the third factor should weigh "squarely against" Eleventh Amendment immunity. (*Id*.)

This Court does not agree. To be sure, seven of the eleven members are elected by STRB members and beneficiaries. However, as Plaintiffs concede, four of the eleven members of the board are appointed by the State and its officials. Plaintiffs also do not address that the "Ohio retirement study council," discussed *supra*, is comprised of members of the General Assembly and other state officials. R.C. § 1707.01. Although these are not members of the STRB, these officials have oversight over the STRB. Thus, this factor does not weigh "squarely against" immunity. At most, it is neutral and not enough to overcome the other three factors.

15

## 4.    Whether the Entity's Functions Fall Within the Traditional Purview of State or Local Government

The Magistrate Judge concluded that this factor also weighed in the STRB's favor, citing both *Ernst* and *Appeal of Ford*.  (Doc. 37 at 15–16).  Plaintiffs contend this was in error, again asserting arguments related to the STRS's funding.  (Doc. 39 at 12). Plaintiffs argue that, unlike *Ernst,* where "the Sixth Circuit found that a retirement system for the statue judiciary was within the purview of government because 'the retirement system is funded by annual appropriations from the state legislature…and serves the officers of one of three essential branches of government," the STRS is not a traditional purview of government because it "holds *no* state funds and is *not* dependent upon state appropriations."  (*Id*. (citing *Ernst*, 427 F.3d at 361) (alterations and emphasis in original)).  Thus, Plaintiffs ask this Court to find that STRB is akin to a private investment firm, managing a pension fund for public employees, instead of a traditional purview of state government.  (*Id*.)

The Court disagrees.  The *Ernst* Court held on the fourth factor the following:

> Fourth, the retirement system's operations have far more in common with a traditional state function than a local one. Doubtless, a local government may create and fund a retirement system, and many local governments do just that. But when, as in this case, the retirement system is funded by annual appropriations from the state legislature, operates in part through the Michigan Treasury and in part through the State's Department of Management and Budget, operates on a statewide basis and serves the officers of one of three essential branches of state government (the judiciary) as well as several other state-wide officials, it is fair to say that the retirement system performs a traditional state function.

16

*Ernst*, 427 F.3d at 361. Thus, while appropriations from the state legislature were a contributing factor, the Sixth Circuit also considered how the state retirement system was operating on a statewide basis serving an essential branch of state government and state-wide officials. *Id*.

So too here. The state teachers retirement system is for the benefit of retired teachers who taught <u>state-wide</u>. The retirement system was created as "a substantial and integral factor in securing and retaining qualified teachers, thus improving the quality of instruction in the public school system" across the <u>entire state</u>. *Appeal of Ford*, 446 N.E.2d at 216 (citing *State Teachers Retirement Bd. V. Bd. Of Tax Appeals*, 202 N.E.2d 418 (Ohio 1964)). The STRB is operating at a state, not local, level.

In sum, the *Ernst* factors, when balanced and weighed, favor the STRB and the ultimate determination that the STRB has carried its burden of demonstrating that it is an arm of the state and entitled to Eleventh Amendment immunity in this case. Like the other courts holding that a state employee retirement system is an arm of the State, this Court does the name. *Ernst*, 427 F.3d at 361 (collecting cases).

### 5.    Dismissal Without Prejudice

The Magistrate Judge recommended dismissing this case in full, with which recommendation this Court agrees. The Court clarifies that the dismissal of Plaintiffs claims against the STRB for lack of jurisdiction due to Eleventh Amendment immunity is a **dismissal <u>without prejudice</u>**, and such dismissal does not prevent Plaintiffs from

pursuing the proper forum. *Ernst*, 427 F.3d at 367.[6] *See also* Ohio Rev. Code § 3307.131 ("Any action brought against the state teachers retirement system or the state teachers retirement board or its officers, employees, or board members in their official capacities shall be brought in the appropriate court in Franklin county, Ohio.").

## IV.  CONCLUSION

Based upon the foregoing:

1.  The Report and Recommendation (Doc. 37) is **ADOPTED**, as expanded upon here;

2.  Defendants' motions to dismiss (Docs. 22, 24) are **GRANTED**;

3.  Plaintiffs' claims against the STRB are **DISMISSED without prejudice**;

4.  Plaintiffs' claims against the Individual Defendants in their individual capacities are **DISMISSED with prejudice**; and,

5.  There Clerk shall enter judgment accordingly, whereupon this action is **TERMINATED** upon the docket of this Court.

**IT IS SO ORDERED.**

Date:  8/17/2021                          *s/Timothy S. Black*
                                         Timothy S. Black
                                         United States District Judge

---

[6] Plaintiffs state they are not alleging, and have not attempted to allege, an *Ex Parte Young* exception to Eleventh Amendment immunity in connection with their claim for injunctive relief. (Doc. 28 at 5, n.2).